PEAY *v.* PANICH.

4-4005

Opinion delivered October 28, 1935.

R. E. Wiley, for appellants.

Buzbee, Harrison, Buzbee & Wright, for appellee.

JOHNSON, C. J. On April 9, 1933, W. B. Miller, Gordon N. Peay and their respective wives were returning from a week-end visit to Natchez, Mississippi. They were traveling in W. B. Miller's automobile, which was being driven at the time of the incident hereinafter referred to by the owner. Near Vicksburg, Mississippi, the car in which this party was traveling was wrecked while traversing highway 61. Mr. Miller was killed, and his wife was seriously injured, Gordon N. Peay was fatally injured, dying about one month later, and Mrs. Peay suffered very serious and permanent injuries. Two suits were instituted by Mrs. Peay, one in her own right and the other as administratrix of the estate of Gordon N. Peay, deceased, against the administrator of the estate of W. B. Miller, deceased, to compensate the loss and injuries sustained. The complaints alleged, in effect, in addition to the facts heretofore stated, that Miller the owner and driver of the car, was negligent in operating the same at a dangerous rate of speed, namely, more than 60 miles per hour without regard to the safety of the occupants of the car or other traffic upon the highway, and in violation of the traffic statutes of the State of Mississippi which were specially pleaded. All material allegations of the complaints were specifically denied by

540

answers and subsequently the cases were consolidated for trial purposes.

Upon trial to a jury the testimony adduced by appellant tended to establish the following facts: A Mr. Bobb, a witness for appellant testified that on the day of the wreck he was at a filling station situated on the east side of highway 61 going north toward Vicksburg in the State of Mississippi; that at this point a country road intersects the main highway at right angles, and the filling station is located in this intersection; that there is a bridge spanning a small stream in front of the filling station over which the public passes in traveling the highway; that this bridge is 16 or 18 feet in width and approximately 30 feet in length; that the bridge has wings which narrow the highway for the approach of the traveling public; that the highway is straight for approximately one quarter of a mile south of this bridge and in traveling from the south any one can see a two-story frame store building, the filling station building and the bridge for a distance of at least one-quarter mile; that near the bridge is located a sign which says, "Local Road," that south of the bridge open fields lay adjacent to the highway; that immediately prior to the wreck of the Miller automobile, a colored person drove his automobile out of the filling station and began entering the highway; he first saw the Miller car when it was about at the bend of the highway, twelve or fifteen hundred feet south of the store; the colored man's car was driven out into the public road with its front wheels near the center thereof which the Miller automobile was traveling; that he headed south when something went wrong with his engine, and when he saw the other car coming he cut his front wheel back north and the Miller car hit this negro's car about the back end of the front left fender just a glancing blow, knocking his bumper off and bending his fender in and knocking a hole in his left front casing and almost straightening the negro's car north nearly in the center of the road; the Miller car was trying to come back onto the highway and didn't have room and then ran into the banister, the concrete wing of the bridge and then into the creek; that the

Miller car was traveling at a rate of speed of not less than 60 miles per hour, and witness could not ascertain that he slowed up to any extent until the car hit the concrete abutment of the bridge. Mr. Bobb's testimony heretofore quoted was corroborated in detail by that of W. W. Pope, who was interrogated by counsel for appellee on cross-examination as follows:

"Q. (Hands witness a paper.) That gives in a brief form your account of the accident two or three days after the accident?

"A. Yes, sir, that is my signature. I recognize it as my version of the accident."

On redirect examination the following occurred:

"Q. Mr. Harrison has shown you a statement you signed that was made before an insurance adjuster who called on you shortly after the accident?

"Mr. Harrison: Defendant objects to that question as being prejudicial and asks the court to declare a mistrial.

"Mr. Wiley: But your Honor, I have the right to ask this witness if he didn't make this statement to an insurance agent about his interest and all the circumstances.

"The Court: Gentlemen, I think it is highly improper to bring in any insurance company in your examination. Ladies and gentlemen of the jury, you will not consider in this case the statement of the attorney that this statement the witness gave was to an insurance adjuster."

The testimony on behalf of appellee was in sharp conflict with that adduced by appellant and also tended to establish that the negro's car suddenly ran across the highway and into contact with the Miller car. We think it unnecessary to further set out the testimony in detail.

Over the objections and exceptions of appellant the trial court among other instructions gave to the jury in charge appellee's request number 4 as follows:

"No. 4. You are instructed that one who enters an automobile to take a ride with the owner takes the driver of the automobile as he finds him. That is to say that if Mrs. Peay and her husband, Gordon N. Peay, entered

an automobile owned and driven by W. B. Miller, they impliedly accepted whatever risk attended the degree of W. B. Miller's proficiency as a driver and his usual and customary habits of driving, known to them at the time and with which they were familiar, but the Peays did not assume the risks of any negligence or any failure to exercise ordinary care on the part of Mr. Miller.''

The jury decided the issues of fact in favor of appellee, and from the consequent judgment entered thereon appellant prosecutes this appeal.

Appellant urges upon us but two contentions for a reversal, first, that the trial court erred in refusing permission to counsel to interrogate the witness Pope on redirect examination in reference to his signing a written statement at the solicitation of the insurance adjuster and the court's emphatic statement to the jury that counsel's reference to the insurance adjuster was highly improper. This contention presents no error. We have several times held that questions not dissimilar to the one propounded by appellant's counsel were improper and, if pursued, highly prejudicial. *Pekin Stave & Mfg. Co.* v. *Ramey,* 104 Ark. 1, 147 S. W. 83; *Terry Dairy Co.* v. *Parker,* 144 Ark. 401, 223 S. W. 6.

We understand the great weight of American authority to be that any unnecessary reference to an insurance company which has insurance on the subject-matter of the risk is improper and prejudicial. See exhaustive annotations in 56 A. L. R. 1418, 74 A. L. R. 849 and 95 A. L. R. 388.

Neither can we agree that the offered examination of the witness was proper on the theory that it was cross-examination upon new matter injected into the case by appellee's counsel. The written statement referred to was not introduced in evidence, and was only presented to the witness for the purpose of refreshing his memory. The witness admitted making and signing the written statement and explained the asserted discrepancies between his testimony and the written statement. This was proper cross-examination and transgressed no rule of evidence which has been called to our attention, and

did not justify any reference to the statement being procured by an insurance adjuster.

Appellant's second contention is that the giving of appellee's requested instruction number 4 heretofore quoted is reversible error. The argument is that under the doctrine announced by us in *Howe* v. *Little,* 182 Ark. 1083, 34 S. W. (2d) 218, and *Shrigley* v. *Pierson,* 189 Ark. 386, 72 S. W. (2d) 541, a guest in an automobile assumes only the defects in the car not known to the owner, and that the instruction complained of erroneously stated the law to be that such guest also assumes the usual and customary habits of the driver which are known to the guest. We think this instruction is a correct declaration of the law, when measured by the facts and circumstances of this case. The great weight of authority is to the effect that one who enters an automobile as a guest takes not only the car as he finds it (subject of course to the limitation that such defects are not known to the owner) but also assumes the known risks incident to the driver's incompetency, inexperience and driving habits. Volume 4, § 2512, of Blashfield's Cyclopedia of Automobile Law, states the rule as follows: "A guest, entering an automobile, assumes the dangers incident to the known incompetency, inexperience, and driving habits of the driver. Thus such guests accept whatever risk may attend the degree of proficiency which their host has acquired as a driver, and the hazards which are connected with his usual and customary habits with which they are familiar." See also *Rappaport* v. *Stockdale,* 160 Minn. 78, 199 N. W. 513; *Barger* v. *Chelpon,* 6 S. D. 66, 243 N. W. 971; *Poneitowcki* v. *Harres,* 200 Wis. 504, 228 N. W. 126; *Cleary* v. *Eckart,* 191 Wis. 114, 210 N. W. 267, 51 A. L. R. 576; and *Liggett & Myers Tobacco Co.* v. *De Parcq,* 66 Fed. (2d) 678.

No error appearing, the judgment is affirmed.