**Barbara Beayrd ROBERTS, Plaintiff,**

v.

**COMMERCIAL STANDARD INSURANCE COMPANY, Defendant.**

**Civ. A. No. 1193.**

United States District Court
W. D. Arkansas, Fort Smith Division.

Feb. 8, 1956.

Edward H. Patterson, Clarksville, Ark., for plaintiff.

G. Byron Dobbs, Fort Smith, Ark., Edward L. Wright, Little Rock, Ark., for defendant.

JOHN E. MILLER, District Judge.

### Statement

On May 6, 1955, plaintiff, Barbara Beayrd Roberts, filed her complaint herein against the defendant, Commercial Standard Insurance Company.

In many respects the complaint is vague and contradictory and definitely prolix.

The plaintiff alleged that on November 21, 1951, the defendant was the insurer of one Truman Wilkins, a member of the United States armed forces, stationed at Fort Sill, Oklahoma; that the policy of insurance provided indemnity for personal injuries and property damage and among other things obligated the defendant to pay a judgment rendered against its assured, Truman Wilkins; that the plaintiff while riding as a guest in the insured automobile, being driven by the insured Truman Wilkins, was seriously and permanently injured on November 21, 1951; that following the injury she was admitted to the Clarksville Municipal Hospital and Dr. Robert H. Manley of Clarksville was her attending physician.

That on January 17, 1952, while plaintiff was still confined to the hospital, Robert Flocks and J. R. Tankersley, servants, agents, and employees of defendant, and representing themselves to be such, requested Dr. Manley's permission to interview the plaintiff; that the said Robert Flocks represented to Dr. Manley that he was an employee of the defendant and that Truman Wilkins was its assured; that the defendant would pay him for his services, pay the hospital and special nurses for the services of each and all, and requested and confirmed Dr. Manley's employment as a physician for the plaintiff. The said representatives of the defendant knew at the time of obligating the defendant to pay such sums that plaintiff was permanently injured, but did not advise Dr. Manley or any other person of any policy coverage limit.

That, although Dr. Manley advised the said Flocks and Tankersley that plaintiff was suffering pain and that she was not physically or mentally able to transact any business, the said representatives of the defendant went directly to the hospital and gained admission to the private room of the plaintiff. There the said Flocks and Tankersley stated to attendants in the hospital and in the room of plaintiff and to her in the presence of her special nurse, that they were employed by the defendant; that Truman Wilkins was the company's assured and that the company would pay her bills and settle with her, but did not state to plaintiff the amount of coverage or make any mention of any limit for expenses or settlement; that said representations were false and fraudulent; that defendant's agents had no intention at the time of making the said promise, or at any other time, of performing the promise and contract with the plaintiff; that the said Flocks and Tankersley made said representations with the full knowledge of their falsity and with the design and intent that plaintiff should believe said representations and promises and should act in reliance thereon; that the plaintiff did believe said representations and proceeded to answer questions propounded to her by said Flocks and Tankersley, which questions and answers were taken in shorthand by Clyman Izard, court reporter. That she was not furnished a copy of the statement but in accordance with the previous instructions of Dr. Manley she did not sign any statement.

That on March 21, 1955, the plaintiff obtained a judgment against the said Truman Wilkins for the sum of $30,000 because of the injuries she sustained while riding as a guest in the insured automobile.

On page 7 of the complaint plaintiff attempted to summarize the preceding allegations in her complaint as follows:

"Plaintiff states by way of summary; that defendant as aforesaid

through its servants, agents and employees represented to plaintiff and those attending her that defendant would pay her medical, hospital and nurses; that defendant would settle with her and compensate her for her permanent injuries and disability; that said representations were not made in good faith; that plaintiff relied upon defendant's representations and has been damaged as hereinabove alleged; that defendant's servants and agents visited plaintiff at her home in Waldron during the year following, took additional statements from plaintiff, wrote letters to the plaintiff and others who had rendered services to her. That said visits made, and letters signed, were by both J. R. Tankersley and Robert Flocks, each at the time representatives of the defendant.

"Plaintiff states that as a result of defendant's misrepresentations, bad faith, and deception, that she has been embarrassed, humiliated, and injured in her way of life, and has not been able to protect her health and provide treatment on account of defendant's failure to act in good faith, and that plaintiff has suffered mental anguish and great expense and worry, and is entitled to exemplary damages."

The prayer of the complaint is as follows:

"Wherefore, premises seen, plaintiff prays that she have and recover judgment against the defendant, Commercial Standard Insurance Company for the sum of Thirty Thousand Dollars ($30,000.00), the amount of plaintiff's Judgment herein for her personal injuries, pain and suffering, with interest at the rate of six per cent from March 21, 1955.

"Plaintiff prays that she have and recover judgment against the defendant for the further sum of twelve per cent of said Thirty Thousand Dollars ($30,000.00) and accrued interest, from and after April 1, 1955 for statutory penalty imposed by law, until paid.

"Plaintiff further prays that she have and recover judgment against the defendant for the sum of Twenty Thousand Dollars ($20,000.00) as exemplary damages.

"Plaintiff prays that she have and recover judgment against the defendant for a total sum of Fifty Thousand Dollars ($50,000.00) in principal sum, together with interest upon each amount as is prayed for hereinabove and as provided by law; and for all costs herein expended.

"Plaintiff prays that her attorney herein be, by this Court, allowed a reasonable and adequate fee for his services herein rendered, said services being required on account of the defendant's refusal to pay plaintiff's judgment and denial of any and all liability therefor on April 1, 1955.

"Plaintiff prays for all further and proper relief."

There was no motion to make the complaint more definite and certain under Rule 12(e), Fed.Rules Civ.Proc., 28 U.S.C.A. but defendant filed its answer on May 25, 1955, in paragraph 1 of which defendant alleged:

"The Complaint does not state a claim upon which relief can be granted for the following reasons:

"(a) Plaintiff cannot maintain an action on a policy of insurance issued to Truman Wilkins without first complying with the provisions of the Arkansas Statutes which require that first an execution be issued against Truman Wilkins and be returned unsatisfied.

"(b) The allegations of the Complaint that the Defendant's agents, servants and employees made an oral promise on January 17, 1952, to pay some undisclosed amount in excess of the policy limits, do not state a cause of action in contract but even if they did, the face of the Com-

plaint discloses it is barred by limitations.

"(c) The Complaint does not state a cause of action in tort for fraud. The allegations in substance are that a promise to pay was made with intent not to perform which, if true, could only create a cause of action in contract. The allegations of the Complaint that the obtaining of the statement was against the doctor's order and by the allegedly false promise, does not state a cause of action nor does the Complaint state any facts showing or in anywise indicating that the Plaintiff suffered any loss or damage by reason of the taking of said statement. Even if a cause of action in tort is stated in the Complaint, the alleged cause of action is shown on the face of the Complaint to be barred by limitations.

"(d) The Plaintiff in this action seeks to recover, under an insurance policy, the amount of $30,000.00. The Complaint and exhibits thereto show the applicable maximum extent of the coverage of the policy issued by the defendant to Truman Wilkins to be $5,000.00. Under the Statute authorizing a judgment creditor to maintain an action against the company issuing a policy, the Plaintiff can in no event maintain an action for more than the maximum amount of the liability stated in the policy."

In paragraphs III and IV of the answer defendant alleged:

"III

"The Defendant admits that it issued a policy of automobile liability indemnity insurance to Truman Wilkins and that the policy was in force on November 21st, 1951, as alleged in Paragraph Number 5 of the Complaint, but denies other allegations contained in Paragraph Numbered 5. The policy of the automobile indemnity insurance was issued on October 18, 1951, for a period of one year, and provided that it would indemnify Wilkins for any judgment obtained against him arising out of the ownership, maintenance or use of the certain automobile described therein. It further provided that Wilkins would cooperate at all times with the defendant in the defense of any action brought against him, and that he would, at his own expense, attend all hearings and trials in connection therewith. The original of the policy was delivered to Wilkins, and the Defendant has not seen it since delivery. A true copy of the policy is attached hereto, marked Exhibit 'A' and made a part hereof.

"IV

"The cause of action of Barbara Jean Beayrd (being the Plaintiff herein) against Truman Wilkins was called for trial in the Circuit Court of Johnson County, Arkansas, on March 22, 1955. Prior to the date of trial, Wilkins was notified by letter at his last known place of residence at Clarksville, Arkansas, of the date and time of trial. Wilkins was in Clarksville, Arkansas, on March 19 and was seen in the downtown section of Clarksville, Arkansas, he did not contact or confer with counsel for the Defendant herein. On March 21, 1955, counsel for the defendant were called by Wilkins by long distance from Anadarko, Oklahoma, at which time Wilkins stated that his wife was in the hospital there, his car was in a garage, and that he was financially unable to obtain funds to make the trip to Clarksville, Arkansas, for the trial. Whereupon, counsel for the Commercial Standard Insurance Company, being advised by him that the cost would be $14.00 or $15.00 immediately telegraphed the sum of $20.-00 to Wilkins and requested that he appear for the trial. Although the money was delivered to Wilkins at Anadarko, Oklahoma, he did not ap-

pear at Clarksville, Arkansas, at any time during the course of the trial of the cause. At the time the case of Barbara Jean Beayrd versus Truman Wilkins was called for trial, counsel for the defendant stated the foregoing facts to the Court and the attorney for Plaintiff and requested permission to withdraw from the case because the non-cooperation of Wilkins constituted a breach of the policy. The trial court refused to permit counsel for Defendant to withdraw and insisted that counsel continue and try the case, stating that it would be without any prejudice to the rights of the Commercial Standard Insurance Company, Defendant herein. The court refused to grant a continuance, and required the trial to proceed. A copy of said proceedings is attached hereto, marked Exhibit 'B', and made a part hereof. The action of Wilkins in his failure to cooperate constituted a breach of the terms of his policy and seriously damaged the Defendant herein since it deprived the Defendant of a full presentation of the facts for the consideration of the jury. This breach on his part relieved the Defendant herein of any obligations under the policy."

The allegations of the complaint were specifically denied and the prayer of the answer was that the plaintiff recover nothing and that her complaint be dismissed.

On August 23, 1955, defendant filed a motion for judgment on the pleadings or for summary judgment, and supported the motion by the affidavit of G. Byron Dobbs, the deposition of Dr. Sylba Adams, and the policy of insurance issued by defendant to Truman Wilkins.

On September 6, the plaintiff filed a response to the motion but did not support her response with any affidavits or other documents.

On September 14, 1955, the Court by letter, a copy of which was filed in the Clerk's office, advised the attorneys for the respective parties that the motion for judgment on the pleadings or for summary judgment would be overruled, and stated therein the reasons that prompted the Court to deny the motion. An order was entered in accordance with said letter on the next day, September 15, 1955. Upon receipt of the letter the attorney for plaintiff advised the Court that he desired to withdraw his request for a jury trial and to waive a jury and that the case be tried to the court. After considerable delay the case was tried to the Court on January 20, 1956. At the conclusion of the introduction of the testimony by the respective parties the Court took the case under advisement and requested that counsel file briefs in support of their contentions. The briefs have been received and have been considered by the Court, together with all the testimony and exhibits, and the Court now makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

### Findings of Fact

#### No. 1

The plaintiff is a citizen of Arkansas and resides in Scott County within the jurisdictional limits of this Court.

The defendant is a corporation organized under the laws of the State of Texas and is licensed to do business and is engaged in business in the State of Arkansas.

The amount involved herein exceeds the sum of $3,000, exclusive of interest and costs.

#### No. 2

On October 18, 1951, the defendant issued its liability indemnity policy of insurance to Truman Wilkins of Route 2, Clarksville, Arkansas, with a coverage limitation of $5,000 for injuries to any one person sustained by virtue of the operation of the insured automobile. The policy specifically provides that the limit of the company's liability shall be as stated, subject to all the terms of the policy having reference thereto.

In Section II of the Insuring Agreements it is provided that the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;"

Paragraph 16 of the Conditions is as follows:

"The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident."

### No. 3

On November 21, 1951, while the policy was in full force and effect the plaintiff, Barbara Jean Beayrd, now Barbara Beayrd Roberts, was seriously and permanently injured in Johnson County, Arkansas, while a guest in the automobile owned and operated by Truman Wilkins. She was immediately removed to the Clarksville Municipal Hospital and remained there as a patient until her discharge on January 18, 1952.

Upon receiving notice of the accident representatives of the defendant, Robert Flocks and J. R. Tankersley, conducted an investigation of the accident, but no settlement was made with the plaintiff for her injuries or medical expenses.

The adjuster for the defendant, Robert Flocks, as well as J. R. Tankersley, interviewed the Sheriff of Johnson County, where the accident occurred, the insured Truman Wilkins, the young man, J. D. McFatridge, who was riding in the car with the plaintiff and the insured at the time of the accident. The investigator also interviewed Dr. Manley, the attending physician of the plaintiff, and sought his permission to obtain a statement from the plaintiff, but the statement was not obtained until January 17, 1952, the day before plaintiff was discharged from the hospital, at which time a statement was obtained although it was not signed by the plaintiff.

Following the accident, the insured Truman Wilkins was arrested upon a charge of driving an automobile while intoxicated. He was tried in the Municipal Court at Clarksville on December 7, 1951, and upon the testimony of the Sheriff of the County and other witnesses, the insured, the defendant in that case, was found guilty and a fine of $25 and one day in jail was assessed against him. The fine was not immediately paid, and the insured returned to his station in the Army, but it was paid by the insured several months later immediately before or at the time of his discharge from the armed forces.

### No. 4

In the course of the investigation the claims manager of the defendant, J. R. Tankersley, told the plaintiff that there would be a settlement for her injuries and expenses. The first time the statement was made was in the latter part of November, 1951, while plaintiff was in the hospital. The statement or similar statement was also made to Mrs. Amy Hodge, one of the attending nurses of plaintiff. The statement was also made by Tankersley to the Sheriff of the County, and to the insured Wilkins while he was in jail following his arrest for driving while intoxicated.

On February 23, 1952, Bob Flocks, the manager of the Casualty Adjustment Company, wrote plaintiff as follows:

"We will be back to see you within the next few days. We are attaching copy of the bills for nursing services (for) you while in the Clarksville Hospital.

"We have requested Mr. Goodner to send us a copy of the divorce papers, but we have not received them as yet. We are again calling this to his attention."

The bills that were enclosed in that letter covered the services of Mrs. Hodge, registered nurse, Mrs. Sam Harris, registered nurse, Mrs. Margaret A. Lewis, and the hospital bill.

On September 27, 1952, Sister M. Antonita O.S.B., Superintendent of the Clarksville Municipal Hospital, wrote the defendant asking for information regarding the Barbara Beayrd case and if settlement had been made, and if not, when was it anticipated. To this letter Mr. Tankersley replied on October 2, advising Sister Antonita that the case had not been disposed of, but that "our Fort Smith representative, Mr. Bob Flocks, of the Casualty Adjustment Company, Fort Smith, Arkansas, is in the process of bringing this matter to a close. By copy of this letter we are requesting that Mr. Flocks furnish you the date of settlement if made, and if not when it is made. If you desire any additional information we suggest that you write direct to Mr. Flocks, Casualty Adjustment Company, 5 Kelly Building, Fort Smith, Arkansas."

Settlement was not made and none of the medical and hospital expenses have been paid.

### No. 5

On June 10, 1952, plaintiff filed suit No. 1587 in the Circuit Court of Johnson County, Arkansas, against the insured Truman Wilkins, seeking damages in the sum of $78,240. That action was removed to this Court, and on November 5, 1952, plaintiff voluntarily dismissed the suit.

On October 5, 1953, plaintiff filed suit No. 1920 in the Circuit Court of Johnson County against the insured Wilkins, in which she sought damages in the sum of $2,900. On March 24, 1954, an amendment to the complaint was filed in which the damages sought were raised to $60,-000. Upon the filing of that amendment the action was removed to this Court.

Thereupon plaintiff through her present counsel filed a motion to remand and hearing thereon was set for October 22, 1954. The insured Wilkins did not appear on October 22, and after plaintiff presented her evidence the Court continued the hearing until November 8, 1954. At that time Wilkins was present, and the Court heard testimony on the question of the citizenship of Wilkins, and at the conclusion of the hearing an order was entered remanding the case to the Circuit Court of Johnson County.

Immediately after the filing of the first action by the plaintiff against Wilkins, the law firm of Pryor, Pryor, and Dobbs of Fort Smith was employed to represent the insured Wilkins. All legal steps taken in behalf of Wilkins in the several actions instituted against him by the plaintiff were taken by G. Byron Dobbs, a member of the firm of Pryor, Pryor, and Dobbs. Wilkins conferred with Dobbs from time to time and was fully advised of the location of his office.

Wilkins is a native of Clarksville, Arkansas, although on November 21, 1951, he was a member of the armed forces and was stationed at Fort Sill, Oklahoma. The only permanent address furnished by Wilkins to Mr. Dobbs was "c/o John Wilkins, Route 2, Clarksville, Arkansas". John Wilkins is the father of Truman Wilkins.

Prior to the hearing on the motion to remand, Dobbs conferred with Wilkins at his office in Fort Smith. At that time Wilkins was employed at the West End Cafe in Fort Smith, and he assured Mr. Dobbs that in the event he changed his address that he would notify him. However, when the motion to remand was first set for a hearing on October 22, 1954, Wilkins could not be reached and Mr. Dobbs learned that he had left his employment at the cafe several days prior to that date, without advising where he had gone or why he had left. When Wilkins failed to appear for the hearing on the motion to remand on October 22, 1954, Mr. Dobbs wrote him a letter to the address hereinabove set forth, and ad-

vised him of the resetting of the hearing for November 8. In that letter Mr. Dobbs called his attention to the provisions of the policy to the effect that it was necessary for him to be present at any and all hearings and to give his full cooperation in the defense of the suit. Dobbs also stated that if he did not do so that any further handling of the case would be with the express reservation and understanding that such action was not a waiver of any of the policy provisions or a waiver of any breach of his obligation under the policy.

After the remand of the case to the Circuit Court of Johnson County, it was set for trial on March 22, 1955. When Mr. Dobbs learned of the date set for the trial he wrote Wilkins on March 9, 1955, and requested him to be present at the trial. Wilkins received the letter but did not appear at the trial. In the letter advising Wilkins of the date of the trial and requesting his presence, Mr. Dobbs said:

"The case of Barbara Jean Beayrd against you is set for trial on March 22. It is necessary, as we explained last November, that you be there at that time. We would appreciate it if you would, upon receipt of this letter, call us collect and advise us of your whereabouts and that you will be there for the trial."

In addition to writing the insured, Mr. Dobbs wrote the insured's father and asked him to contact his son and request his presence at the trial at Clarksville on March 22, 1955.

Mr. Dobbs heard nothing from the insured Truman Wilkins or the insured's father, John Wilkins, until approximately 1:30 p. m. on March 21, 1955, the day before the trial date, when the insured called Dobbs collect long distance telephone from Anadarko, Oklahoma. He advised Dobbs that he had received his letter of March 9 within a few days after it had been mailed; that his wife at that time was in the hospital, and his automobile was in the garage; and that he was without funds to make the trip

to Clarksville for the trial the next day, and that he had no way of obtaining funds until the following day, but that he thought he could borrow the necessary money from his father-in-law to make the trip. He said that he realized that if he waited until March 22 to begin his trip to Clarksville that he could not get there in time to be of any assistance at the trial. Mr. Dobbs emphasized the importance and necessity of his being at the trial for the purpose of testifying, and advised Wilkins that he would immediately telegraph him sufficient funds to make the trip. Wilkins advised him that he thought the expenses would not exceed $15. Whereupon Dobbs told him to remain at Anadarko and he would immediately telegraph him $20, and that as soon as the money was received Wilkins should leave Anadarko for Fort Smith and be in his office the next morning, March 22, 1955, at 7:00 a. m., so they could drive to Clarksville and be present for the opening of the court. Wilkins assured Dobbs that he would be present in his office at the time requested. The money was wired to Wilkins and he received it soon after 2:00 p. m. on the date it was sent, March 21. Wilkins never communicated with Mr. Dobbs any more. After his telephone call of March 21 and after he received the money, the $20, he did not appear at the trial.

When the case was reached for trial in the Johnson Circuit Court on the date set, March 22, 1955, Mr. Dobbs advised the court of his efforts to obtain the attendance of the insured and that his appearance as the attorney for the defendant had all been pursuant to the provisions of the policy which provided that the company would furnish to Truman Wilkins a defense and further that because of the insured's failure to comply with the provisions of the policy requiring his cooperation, that he desired leave of the court to withdraw from the case. Whereupon a colloquy occurred between the presiding judge of the Circuit Court for Johnson County and Mr. Dobbs, in which the judge stated:

"The defendant in cases of this character and type following the setting, could by his absence delay them, and it would certain delay the disposition and trial of cases for that reason.

"The court feels that in view of the long period of time the case has been pending that it should be tried and disposed of on its merits.

"I can appreciate as far as Mr. Dobbs is concerned. He has acted in good faith, the court doesn't question that at all. But the fact remains, the plaintiff is here and ready for trial and if counsel for plaintiff request, I think the case should be disposed of at this time."

Mr. Dobbs then advised the court and the attorney for the plaintiff that the amount sued for is greatly in excess of the policy limits.

The colloquy continued as follows:

"*The Court:* The court presumes that under the provisions of the policy, the Insurance Carrier, whom you state privately you represent, obligates itself to defend a case of this type of any alleged liability against the assured, is that correct?

"*Mr. Dobbs:* The provisions of the policy under its general terms is to furnish a defense, and its benefits provide by the policy to indemnify any judgment which are recovered against him to the extent of the policy.

"But we take the position that having breached it, he is entitled to nothing from us, neither defense or indemnity. Having failed to co-operate as required, he is therefor entitled to nothing from us, either indemnity or defense.

"*The Court:* You have ably represented in the defense of Truman Wilkins, and as his attorney you have filed answer and other pleadings. The court feels that you should continue to appear, not waiv-

ing any of the legal rights as far as the Insurance Carrier is concerned, those are things that should come up if a judgment is rendered. I will deny your request to withdraw in this case."

Thereupon Mr. Dobbs advised the court that the young man, Jack McFatridge, who was in the car with the insured and the plaintiff at the time of the accident was presently in Germany in the Army, that he had a statement from McFatridge which would be substantially his testimony if he were present. Mr. Dobbs moved for continuance of the case on account of the absence of the witness, McFatridge, and also on account of the absence of the defendant, the insured Truman Wilkins. The motion to continue was overruled and the case proceeded to trial, and resulted in a judgment being rendered in favor of the plaintiff against Truman Wilkins, the insured, in the sum of $30,000.

Following the rendition of the judgment, Mr. Dobbs advised the insured by letter dated April 1, 1955, and addressed to him in care of his father at Clarksville, Arkansas, of the rendition of the judgment and that he had thirty days from March 22 in which to file a notice of appeal if he desired to appeal. In the letter Mr. Dobbs further advised Wilkins that because of his failure to comply with the provisions of the policy, of which he had been previously advised, that the company was not obligated to pay any part of the judgment.

### No. 6

Mr. Dobbs never saw Wilkins from November 8, 1954, the date of the hearing on the motion to remand until July 23, 1955, when his deposition was taken in the instant case at Clarksville. In that deposition, which was introduced in evidence by the plaintiff, he testified that he received the letter from Mr. Dobbs advising him of the date of the trial in the Circuit Court of Johnson County; that he received the money from Mr. Dobbs with which to pay his expenses

but that he did not attend for the reason that his wife was ill in the hospital at Lawton, Oklahoma; that when he received the money he drove from Anadarko to Lawton and did not have time to drive from Lawton to Fort Smith to meet Mr. Dobbs the next morning, March 22, for the purpose of attending the trial. He stated that his wife was in the Kiowa Hospital at Lawton. He further testified that at all times since the occurrence of the accident his permanent address had been in care of his father at Clarksville, Arkansas, and that he was in Clarksville just a few days prior to March 22, 1955, the trial date. He was asked if he was not in Clarksville on March 19, 1955, and he said he was there not long before the trial date but that he did not remember just the time that he was there.

The deposition of Dr. Sylba Adams was introduced by defendant, and he testified that he was the chief medical officer of the Kiowa Hospital; that prior to July 1, 1955, the hospital was a part of the United States Indian Service, but that since that date it has been a part of the Public Health Service of the United States; that a record was made of all patients who entered the hospital and that he had examined the hospital records to determine when Mrs. Truman Wilkins was admitted to the hospital, and that the record showed that she was admitted on July 5, 1954, because of pregnancy and she was delivered on the date of her admission; that she had not been in the hospital at any time since July 5, 1954.

The testimony of Dr. Adams further shows that the records were kept in the usual course of business and she was not a patient nor was she receiving any treatment as an out-patient in March, 1955.

A consideration of the testimony of Truman Wilkins, together with the testimony of Dr. Adams, convinces the Court that Wilkins' wife was not in the hospital as stated by him, and that his failure to attend the trial was wilful.

### No. 7

Subsequent to the discharge of plaintiff from the hospital at Clarksville and after her return to her home at Waldron, Arkansas, she wrote Mr. Flocks, the adjuster for the defendant, and advised him that if she did not hear from him before April 29 that she intended to see a lawyer. She also requested that the defendant furnish her with a copy of Truman Wilkins' insurance papers.

She did not hear further from the representative of the insurance company, and accordingly she employed her present counsel on or about April 29 and the first suit hereinbefore referred to was filed by her present counsel in the Circuit Court of Johnson County on June 10, 1952.

### No. 8

As stated in Finding of Fact No. 3, the statement of plaintiff was taken on January 17, 1952, by an agent of the defendant, but was not signed by plaintiff.

At page 6 of the statement, Exhibit D to complaint, the following questions and answers appear:

"Q. As far as you, yourself, are concerned, though, you don't think— or do you—that his drinking had anything to do with the accident? A. No, sir.

"Q. You don't think he was drunk? A. No. I think the highway was slick and everything and I don't think it could have been helped under the circumstances.

"Q. You do think he did everything he could to avoid the accident? In other words, he wasn't trying to cause an accident or drive recklessly or anything like that? A. No."

Plaintiff also stated that Wilkins just drove as usual, that he did not show signs of being drunk (p. 3 of statement), and that it did not seem that he was driving too fast, although she was not a good judge of speed (p. 8 of statement).

### No. 9

During the trial counsel for defendant expressly waived the statutory require-

ment that the plaintiff have an execution issued against the judgment debtor, Wilkins, and returned nulla bona, before filing an action against the defendant. Ark.Stats. §§ 66–526, 66–527.

### Discussion

It should be noted at the outset that during the course of the trial the Court disposed of that portion of plaintiff's claim in which plaintiff sought a judgment in excess of the policy limit of $5,000. At the conclusion of the introduction of plaintiff's evidence the Court ruled as a matter of law that plaintiff had failed to establish any possible claim in excess of the policy limit, and thereafter the evidence was limited to that bearing on the question of whether the insured, Truman Wilkins, had breached the cooperation provision of the policy. The latter question is the one now before the Court for consideration.

Plaintiff contends that Wilkins substantially complied with the cooperation provision of the policy (set out in Finding of Fact No. 2) and that, in any event, his failure to attend the trial did not prejudice the defense of the case. To the contrary, defendant contends that Wilkins failed to cooperate and that his failure materially and substantially prejudiced said defendant in the defense of the action against Wilkins.

█ It is true, as plaintiff contends, that to constitute a breach of policy the lack of cooperation must be material. See annotations, 139 A.L.R. 771, 780; 98 A.L.R. 1465, 1469; 72 A.L.R. 1446, 1455. It is also true that some courts go further and require prejudice to the insurer. Stevens v. United States, 10 Cir., 146 F.2d 120; Associated Indemnity Corporation v. Davis, 3 Cir., 136 F.2d 71.

Apparently the Arkansas Supreme Court has not passed upon the precise question of prejudice, but in United States Fidelity & Guaranty Co. v. Brandon, 186 Ark. 311, at page 315, 53 S.W.2d 422, at page 423, the Court said:

"It is true that it was the duty of the assured to co-operate with the defendant by lending aid and such information as he possessed in preparing the case for trial, and to attend the trial and testify as to the true facts and circumstances concerning the accident. Without his presence and aid the insurance company was seriously handicapped. But there is nothing in this record to show the reason for Hanley's absence from the trial. For aught we know he may have been seriously ill or dead. We are therefore of the opinion that it was the duty of the insurance company in this action to go further than showing his mere absence from the trial, in order to show lack of cooperation, and to show the reason for such absence. Appellant cites and relies upon numerous cases from other jurisdictions holding that it is the duty of the assured to attend the trial and to co-operate with the company in defending the action against him, but in practically all of them it is shown that the assured's absence was premeditated and willful. * * * Here, however, the evidence fails to disclose any reason why Hanley was absent. Only four days before the trial be stated his intention to be present at the trial, and to co-operate. Prior to that time he had co-operated by furnishing appellant a statement of himself and appellee and giving it the names of a number of available witnesses. We cannot therefore say as a matter of law that his failure to attend the trial, in the absence of any proof or explanation as to why he so failed, establishes a breach of the contract in this regard. On the contrary, we think it a question for the jury, and that it was the duty of appellant in this trial to show that Hanley had no good reason to absent himself from the trial."

Since the Arkansas Court requires wilful noncooperation on the part of the insured, it seems that the Court would also require prejudice to the insurer, and

for purposes of this opinion this Court is assuming that the Arkansas law requires such prejudice before noncooperation can be a complete defense.

In Finding of Fact No. 6 the Court found that the failure of Wilkins to attend the trial was wilful, and in view of this finding of fact it is clear that Wilkins failed to cooperate and that his failure was material. The real question in the case is whether such failure to cooperate prejudiced the defendant Insurance Company.

The general effect of the absence of a defendant from a trial is noted in Royal Indemnity Co. v. Rexford, 5 Cir., 197 F. 2d 83, 85, as follows:

"We agree with the views announced in the cases appellant cites: 'The insured under a liability policy containing a co-operation clause is obligated to assist in good faith in making every legitimate defense to a suit for damages. * * * If he refuses to give the information which the insurer needs to make the defense, or absents himself so that his testimony cannot be obtained, recovery on the policy should be denied, if the insurer acts with good faith and diligence. * * * The judgment creditor, who sues on a policy indemnifying the insured against claims for damages, stands in the shoes of the insured and is chargeable like the insured with any breach of conditions on which liability depended.' Indemnity Ins. Co. of North America v. Smith, 197 Md. 160, 78 A.2d 461, 463.

" 'The company endeavored to locate her without success. Under the contract of insurance it was entitled to her aid and assistance. It will not do to say that the plaintiffs in the trespass actions had a strong case and the defendant a weak one * * *. The very fact that the defendant was absent without explanation and could not be secured was prejudicial to garnishee's rights and would have had a material effect on the verdicts.' Cameron v. Berger, 132 Pa.Super. 484, 1 A.2d 529, 533.

" 'His mere presence as defendant at the trial would have been sufficient to show that he had faith in the defense being made in his name and in his behalf, whereas his absence might, and probably would have, led the jury to infer the lack of faith in, or lack of sympathy with such defense. * * *' Fischer v. Western & Southern Indem. Co., Mo. App., 106 S.W.2d 490, 494.

" 'It is a well-settled rule in this state that the rights of a garnishing creditor are no greater than those of the debtor, and, if the debtor cannot recover against the garnishee, then the garnishing creditor cannot * * * (The) failure (of the insured) to attend the trial and there disclose the facts known to him regarding the accident was a breach of his contract of insurance and therefore barred any recovery on the policy by him.' Eakle v. Hayes, 185 Wash. 520, 55 P.2d 1072, 1073.

" 'Every person familiar with the trial of cases by jury knows that the case of an individual defendant is seriously, if not hopelessly, prejudiced by his absence from the trial.' Glens Falls Indemnity v. Keliher, 88 N.H. 253, 187 A. 473, 476."

The Court held, however, that while a strong case of noncooperation had been made out, there was sufficient evidence to go to the jury on the question and to avoid a directed verdict.

In the instant case the Court is convinced that the failure of Wilkins to attend the trial substantially prejudiced the defendant Insurance Company. Plaintiff contends that Wilkins was clearly liable to her, and that his testimony would have been of no benefit in the defense of the action. The Court cannot agree with this contention.

Plaintiff was a guest in the automobile being driven by Wilkins, and before she could recover a judgment against him

she was required to prove that he was guilty of wilful misconduct or wilful and wanton disregard of the rights of others, in the operation of his automobile. Sections 75–913 to 75–915, inclusive, Ark. Stats.1947, Ann. Even gross negligence would not be sufficient to render Wilkins liable to plaintiff. Steward v. Thomas, 222 Ark. 849, 852, 262 S.W.2d 901; Cooper v. Calico, 214 Ark. 853, 218 S.W.2d 723.

If the statements made by plaintiff (partially set out in Finding of Fact No. 8) were true, it is extremely doubtful that Wilkins was guilty of wilful misconduct, and it may well be that his failure to appear at the trial was the primary reason the jury returned a verdict against him.

Moreover, it is very likely that the plaintiff assumed the risk incident to the condition of the driver, Truman Wilkins. In this connection, in Peay v. Panich, 191 Ark. 538, at page 543, 87 S.W.2d 23, at page 25, the court said:

> "The great weight of authority is to the effect that one who enters an automobile as a guest takes not only the car as he finds it (subject of course to the limitation that such defects are not known to the owner), but also assumes the known risks incident to the driver's incompetency, inexperience, and driving habits. Volume 4, § 2512, of Blashfield's Cyclopedia of Automobile Law, states the rule as follows: 'A guest, entering an automobile, assumes the dangers incident to the known incompetency, inexperience, and driving habits of the driver. Thus such guests accept whatever risk may attend the degree of proficiency which their host has acquired as a driver, and the hazards which are connected with his usual and customary habits with which they are familiar.'"

Assumption of risk is a valid defense even though defendant's conduct was wilful and wanton as required by the guest statute. Russell v. Turner, D.C.Iowa, 56 F.Supp. 455, 458, affirmed, 8 Cir., 148 F.2d 562; 61 C.J.S., Motor Vehicles, § 486, p. 96. The testimony of Wilkins was material, if not essential, on the question of whether the plaintiff assumed the risk in the instant case.

In passing it might be noted that plaintiff also may have been guilty of contributory negligence, but contributory negligence is no defense in an action brought under the guest statute. Russell v. Turner, supra; 61 C.J.S., Motor Vehicles, § 486, p. 94, supra.

As above stated, the Court is convinced that Wilkins' failure to cooperate prejudiced the defendant, and it follows that such failure constituted a breach of the policy provision requiring cooperation by the insured. Thus the plaintiff, who stands in the shoes of the insured, cannot recover against the defendant insurer. Warren v. Commercial Standard Insurance Co., 219 Ark. 744, 747, 244 S.W.2d 488.

It is true that in some states the injured party, by statute, is allowed a recovery against the insurer even though the insured has breached the policy. See, Warren v. Commercial Standard Insurance Co., supra, at page 747 of 219 Ark., at page 490 of 244 S.W.2d. And in Arkansas this is true as to policies "accepted as proof" under the Financial Responsibility Act. See, Sec. 19(b) of Act 160 of 1951—the Act in effect at the time the policy in question was issued on October 18, 1951. In the case at bar the policy was not issued under the Financial Responsibility Act, and since there is no Arkansas statute to the contrary, the general rule applies and plaintiff's rights are no greater than the rights of the insured, Wilkins. Warren v. Commercial Standard Insurance Co., supra. See also, New Zealand Insurance Co., v. Holloway, D.C.La., 123 F.Supp. 642, 646–647.

Therefore, plaintiff is not entitled to recover a judgment against the defendant in the instant case.

376

### Conclusions of Law

#### No. 1

The Court has jurisdiction of the parties to and the subject matter of this action.

#### No. 2

.The insured, Truman Wilkins, breached the cooperation provision of the policy in the instant case.

#### No. 3

Plaintiff's rights are no greater than those of the insured, and therefore plaintiff cannot recover against the defendant.

#### No. 4

The complaint of the plaintiff should be dismissed, and a judgment in accordance with the above should be entered.