The **HOME INDEMNITY COMPANY,**
Plaintiff,

v.

Albert **FINLEY,** Lois Finley, Sammy J.
Kelly, Margriet Long and Billy White-
ner d/b/a Whitener & Son, Defendants.

No. LR–65–C–205.

United States District Court
E. D. Arkansas, W. D.

Dec. 9, 1966.

James D. Storey, of Wright, Lindsey & Jennings, Little Rock, Ark., for plaintiff.

Joseph L. Buffalo, Jr., of Pope, Pratt, Shamburger, Buffalo & Ryan, Little Rock, Ark., for Billy Whitener dba Whitener & Son.

Comer Boyett, Jr., of Henry & Boyett, Searcy, Ark., for Albert Finley and Lois Finley.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

This declaratory judgment suit is now before the Court on an amended motion filed by plaintiff, The Home Indemnity Company, following a non-jury trial but prior to entry of judgment. By its motion plaintiff asks, in effect, that the Court vacate and reverse its orally announced finding and conclusion that at the time of a motor vehicle collision to be described the defendant Margriet Long was an omnibus insured under a liability policy issued by plaintiff to Mrs. Long's employer, the defendant Sammy J. Kelly, and that she is presently entitled to protection under that policy. The motion is opposed by the defendants Albert Finley and Lois Finley, his wife, and by the defendant Billy Whitener. Mrs. Long has never entered any appearance in the case or filed any pleading of any kind.

The accident in question took place on October 4, 1965, at a point on U. S. Highway 67 between Bald Knob and Bradford, Arkansas. Three vehicles were involved. Mrs. Long was driving a pickup truck belonging to her employer, Kelly. Albert Finley was operating a vehicle belonging to his wife; and Billy Whitener was operating his own vehicle. The collision involved the striking of the Finley car by the vehicles operated by Mrs. Long and Whitener. Mr. Finley was injured as a result of the accident, and his wife's car was damaged.

Immediately prior to the accident Mrs. Long stated to Dorothy Brahic and Geneva Brahic that she was operating the Kelly truck with Kelly's consent. Soon after the accident Kelly made a somewhat ambiguous statement to Arkansas State Trooper Elmer Belcher, who investigated the wreck, which statement was subject to the interpretation that Mrs. Long had Kelly's express or implied consent to operate his truck.

However, two days after the accident Mrs. Long stated to an adjuster for the plaintiff insurance company that at the time of the collision she was operating the Kelly truck without his knowledge or consent. That statement was later reduced to writing and Mrs. Long swore to the truth of its contents.

On October 28, 1965, Mr. and Mrs. Finley filed suit in this Court against Mrs. Long, Kelly, and Whitener alleging in substance that the accident and its consequences were proximately caused by the concurrent negligence of Mrs. Long and Whitener, and that at the time of the accident Mrs. Long was acting within the scope of her employment by Kelly.

Kelly's insurance company, plaintiff here, immediately undertook the defense of its named insured and filed an answer denying liability. However, the insurance company declined to defend the action on behalf of Margriet Long since if she was driving the truck without Kelly's knowledge or consent, she was not covered by the policy and no duty was owed to her by the insurer.

In late November 1965 plaintiff commenced this action against Mrs. Long, the Finleys, and Whitener seeking a declaratory judgment to the effect that Mrs. Long did not have the consent of

Kelly to her operation of the truck, and that she was not covered or protected by the policy.

In December 1965 the discovery depositions of Long and Kelly were taken in both cases. In both depositions the deponents swore that when the accident occurred Mrs. Long did not have Kelly's consent to drive the truck.

Armed with those depositions plaintiff moved for summary judgment. The Finleys countered with an affidavit from Trooper Belcher referring to the earlier oral statement of Kelly. The motion was denied.

The cases were consolidated for purposes of trial and were heard by the Court without a jury. In the course of the trial Mrs. Long, who had filed no answer, was called to the stand as a witness for the Finleys. She was not asked about the accident but was asked whether she had Kelly's permission to drive the truck on the occasion in question. In direct contradiction of her earlier sworn statement to the adjuster and of her own deposition she swore that she had Kelly's permission at the time, and she persisted in that testimony despite a vigorous cross examination by counsel for Kelly and the insurance company.

At the conclusion of the trial the Court announced its findings and conclusions from the bench. It was found that the accident was proximately caused by the concurrent negligence of Whitener and Long, but that at the time of the accident Mrs. Long was not acting in the scope of her employment by Kelly; that Long was 75 percent to blame for the accident, and that Whitener was 25 percent to blame; that Mr. Finley had been damaged to the extent of $16,500 and that Mrs. Finley had been damaged to the extent of $3,165. It was also found that Mrs. Long was driving the Kelly truck with Kelly's permission, so that she would have been an omnibus insured under the policy.

The legal consequences of those findings, to which findings the Court now adheres, were that Mr. and Mrs. Finley would be entitled to judgment against Whitener and Mrs. Long, jointly and severally, but with rights of contribution between the two defendants, and that plaintiff in this case would be liable, on account of the status of Mrs. Long, to pay or contribute to the payment of the Finley judgment up to its policy limits. Since it had been found that Mrs. Long was not acting in the scope of her employment when the accident occurred, it followed that Kelly would be entitled to a dismissal of the personal injury suit against him.

Based upon the fact that Mrs. Long had testified in direct contradiction to her previous sworn statement and depositions, plaintiff filed the instant motion before entry of judgment in either case. It is the theory of plaintiff that the conduct on the part of Mrs. Long which has been described amounted to a violation of the standard cooperation clause contained in the policy.

In resisting the motion the Finleys and Whitener urge that plaintiff's present contention cannot be considered post-trial; that plaintiff waived the cooperation of Mrs. Long and is estopped to rely on her alleged lack of cooperation; and that in any event the cooperation clause does not apply to the situation presented here.

The problem presented by the motion has been complicated perhaps by the fact that the declaratory judgment suit and the personal injury suit were tried together, and that the same attorney represented the plaintiff in this case and the defendant Kelly in the personal injury case. The Court will say that at an early stage it rejected plaintiff's request for a trial of this suit in advance of a trial of the personal injury suit and, on its own motion, consolidated the two cases for trial. Further, in the course of the trial the Court reserved ruling on Kelly's motion for judgment at the close of the Finleys' case.

■ The contention of the defendants that plaintiff's present contention cannot be heard post-trial is without merit. When the complaint in this case was filed, plaintiff may well have

thought that it had no basis or occasion for pleading lack of cooperation as an alternative to a plea of non-coverage. Actually, plaintiff's problem about co-operation did not really arise until Mrs. Long after persisting for months, except for her oral unsworn statement to the Bahics, in her position that she lacked permission to drive the truck, suddenly did an about face and gave testimony which the Court ultimately credited.

■ Nor is there any merit to defendants' claim of waiver and estoppel. Plaintiff has never said or done anything on which the defendants resisting the motion have relied to their detriment; hence, as to them plaintiff cannot be said to be estopped. As to waiver, it has been the consistent position of plaintiff, which it still maintains in spite of the Court's findings, that Mrs. Long was not an omnibus insured; if she was not, then she had no duty to cooperate under the terms of the policy; there has never been any question of plaintiff "waiving" her cooperation.

The suggestion is made that when Mrs. Long testified, counsel for plaintiff should have withdrawn from the litigation. That suggestion is insubstantial. Counsel was not representing Mrs. Long and did not call her to the stand. He was required to remain in the personal injury case to defend the named insured, Kelly; he clearly was not required to abandon this case, and he certainly has not done so.

Having disposed of defendants' preliminary objections to the motion, the Court now considers plaintiff's position on its merits. While there is a great mass of case law dealing with cooperation clauses in liability insurance policies, the general principles governing the effect of a substantial breach of such a clause contained in an automobile liability policy are, in the abstract, neither involved nor difficult to state.

■ Whether compliance with such a clause by an insured be deemed a condition precedent to coverage or a condition subsequent which absolves the in-surer from liability, there is no question that the clause is a valid and enforceable part of the contract of insurance, and if there is a substantial breach of it by the insured, including an omnibus insured, the insurer is not liable on the policy either to him or to a person injured by his negligence or misconduct, particularly where the breach is prejudicial to the insurer. 7 Am.Jur.2d, Automobile Insurance, §§ 176 and 225; Aetna Casualty & Surety Co. v. Simpson, 228 Ark. 157, 306 S.W.2d 117; Warren v. Commercial Standard Ins. Co., 219 Ark. 744, 244 S.W.2d 488; United States F. & G. Co. v. Brandon, 186 Ark. 311, 53 S.W.2d 422; Commercial Casualty Ins. Co. v. Missouri Pacific Transportation Co., 8 Cir., 117 F.2d 313; Royal Indemnity Co. v. Morris, 9 Cir., 37 F.2d 90; Roberts v. Commercial Standard Insurance Co., W.D.Ark., 138 F.Supp. 363.

■ It is well established that a lack of cooperation which will absolve an insurer from liability with respect to a given occurrence may be found in material false statements, intentionally given and not corrected in time to avoid prejudice to the insurer. 7 Am.Jur.2d, supra, § 178; Aetna Casualty & Surety Co. v. Simpson, supra; Standard Accident Insurance Co. of Detroit, Mich. v. Winget, 9 Cir., 197 F.2d 97, 34 A.L.R.2d 250, and Annotation following; General Accident Fire & Life Assurance Corp. v. Rinnert, 5 Cir., 170 F.2d 440. Whether a false statement constitutes a breach of the cooperation clause is generally a question of fact. United States Casualty Co. v. Schlein, 5 Cir., 338 F.2d 169; Commercial Standard Ins. Co. v. Readnour, 10 Cir., 241 F.2d 14, 79 A.L.R.2d 1036; Tillman v. Great American Indemnity Co. of New York, 7 Cir., 207 F. 2d 588; General Accident Fire & Life Assurance Corp. v. Rinnert, supra; Galt v. Phoenix Indemnity Co., 74 App.D.C. 156, 120 F.2d 723; State Automobile Mutual Ins. Co. of Columbus, Ohio v. York, 4 Cir., 104 F.2d 730. However, where the facts are undisputed or only one logical inference can be drawn from the facts, the question is one of law.

Buffalo v. United States F. & G. Co., 10 Cir., 84 F.2d 883; United States F. & G. Co. v. Wyer, 10 Cir., 60 F.2d 856.

A false statement may be either favorable or unfavorable to the insurer. With regard to statements favorable to the insurer or to the defense of the insured, it is said in 7 Am.Jur.2d supra, pp. 512–513:

"The general principles stated above have also been applied in cases where the insured's false statements are favorable to the insured's defense. Thus, it has been stated that an insured cannot be said to have cooperated and assisted in his defense merely because he persisted in a false story until the conclusion of the litigation, since it is truthful, rather than consistent, testimony which is the test of cooperation. This is true with regard to favorable statements concerning the circumstances of the accident or concerning the identity of the driver of the automobile at the time of the accident  *  *  * "

A false statement regarding the circumstances of an accident will not ordinarily affect the question of the initial coverage of the policy. It is clear, however, that a false statement with respect to the identity or status of the operator of an automobile involved in an accident may directly affect coverage because if the false statement were true, the driver may not have been an "insured" within the meaning of the policy. That, of course, is the situation presented in this case.

Cases of both types are collected in an Annotation entitled "False statements favorable to defense, made and persisted in by insured, as breach of cooperation clause," 79 A.L.R.2d 1040 et seq., following the text of Commercial Standard Insurance Co. v. Readnour, supra. The tenor of the decisions discussed in that Annotation is that a false statement of either type may be a fatal breach of the cooperation clause.

The Readnour case is not entirely dissimilar to this case, although there are factual and procedural distinctions. In that case the named insured gave her grandson permission to use her car; he thus became an omnibus insured so long as he was driving the car with her permission. On the occasion in question the car was occupied by the young man and a young woman; an accident occurred, and all parties concerned were injured. Shortly after the accident the young man stated to the insurance company's adjuster that he had sustained a head injury and could not remember whether he or his girl friend was driving when the accident happened; a few days later he gave another statement to the effect that his memory had cleared, and that he was positive that the girl was driving at the time of the collision. She and other injured persons sued the young man on the theory that he was the driver; in the course of discovery in the State court the man swore that the girl was driving, and she swore to the contrary. The insurance company then filed a declaratory judgment action in federal court alleging that if the girl was driving, she was not an "insured" with respect to whom the company owed any obligation, and that if the young man was driving, he had breached the cooperation clause by swearing that the girl was driving. The case was tried to a jury which found in answer to a specific interrogatory that the young man was driving; the District Judge refused to enter judgment for the insurer and entered judgment to the effect that the policy was applicable. The insurance company appealed, and the judgment was reversed for a determination of whether the young man's false statements as to the identity of the driver were intentional or merely mistaken. The Court of Appeals said (p. 17 of 241 F.2d, p. 1039 of 79 A.L.R.2d):

"In the instant case the jury's findings established the fact that Smith's testimony and representations to the company were false but the verdict did not negative the possibility of honest mistake upon the part of Smith. The cooperation clause may be breached by a deliberate false representation that another was driving the

car; the clause is not breached by a mistaken false representation."

An Annotation entitled "Liability insurance; misstatement by insured, later withdrawn or corrected, as breach of cooperation clause," 34 A.L.R.2d 264 et seq., is not directly in point here because it involves the problem of whether a correction of a misstatement prior to or in the course of the insured's trial cures what would otherwise have been a breach of the cooperation clause. However, in Section 12 of the Annotation it is recognized that the owner's permission to use his car may be an area of misstatement, and that an uncorrected false statement as to such permission may constitute a breach of the clause. See also cases cited in 4 A.L.R.2d Later Case Service, p. 173.

Before going further the Court deems it well to comment briefly on why it accepted Mrs. Long's testimony. If her trial testimony was true, she was, of course, a self-confessed perjurer. While that fact impeached her as a witness and affected adversely the weight to be given to her testimony, it did not render that testimony either incompetent or incredible. It was consistent with her initial statement to the Brahics and with Kelly's statement to Trooper Belcher. Her explanation of why she testified falsely when she gave her deposition and of why she told an untruth to the adjuster was not unreasonable in the Court's estimation when all of the facts and circumstances of the case are considered. The Court thought at the time and thinks now that Mrs. Long would not have taken the truck without Kelly's permission. However, she might have quit her job had Kelly refused his permission, and the Court thinks that he gave it to her.

Since her trial testimony has been accepted as true, her pretrial statements under oath must be taken as false. That they were material there can be no doubt. Her permission or lack of permission to use the truck was of controlling importance as far as the plaintiff's duty to defend her was concerned and was also relevant to the question of whether she was driving the truck in the course of her employment. It is not even suggested that her false statements were made through inadvertence or mistake. She testified that her statements prior to the trial were intentionally false, and she explained why she made them.

Assuming that under Arkansas law an insurer must show prejudice before availing itself of a breach of a cooperation clause, cf. Roberts v. Commercial Standard Insurance Co., supra, 138 F. Supp. at 373–374, the Court has no difficulty in finding that the over-all conduct of Mrs. Long seriously prejudiced plaintiff.

It must be realized, however, that from a legal standpoint the prejudice did not arise from her act in testifying to the truth at the trial, or from the fact that the Court accepted her testimony. Her conduct prior to the trial prejudiced plaintiff in that plaintiff's representatives were lulled into a sense of false security and made no serious effort to settle or participate in a settlement of the Finley claims, which effort the Court finds would have been made if plaintiff had thought that Mrs. Long was covered by the policy.

At the outset the potential obligations and liabilities of plaintiff under its policy were two-fold. In any event it had to defend its named insured and pay any judgment rendered against him; similar duties existed with respect to Mrs. Long if, but only if, she was covered by the policy. From a very early stage two things must have been rather clear: (1) that Mrs. Long was in all probability liable to the Finleys; (2) that Kelly in all probability was not. Thus, if Mrs. Long was an omnibus insured, plaintiff probably would have to compensate the Finleys up to the policy limits unless their claims could be settled. On the other hand, if she was not an omnibus insured, and if Kelly was not liable to the Finleys, as he probably was not, the company had no exposure and would have no interest in settlement. No serious effort to settle was made by plaintiff.

At the hearing on the motion which was rather informal and which was held before the Court had had an opportunity to go into the matter, the Court expressed a doubt as to whether a misstatement which, if true, would place the person making the statement outside the coverage of a liability policy could be invoked successfully by an insurer as a breach of the cooperation clause of the policy in a case where the insurer had refused to recognize the person in question as an insured and had consistently contended down to and throughout the trial that the statement was true and that coverage did not exist.

The Court cannot say that its post-hearing researches have either confirmed or entirely dispelled its doubt on the subject, and the matter still gives the Court some trouble. When the authorities above cited are considered in the light of the facts of the case, plaintiff may very well be entitled to relief on its theory that Mrs. Long "breached the cooperation clause," and, if forced to do so, the Court might well so hold.

However, the Court reaches the same result by a somewhat different route whereby the Court's problem with the "cooperation clause," which problem may be more semantical than anything else, is avoided.

Whether one characterizes the conduct of Mrs. Long as a "breach of the cooperation clause," or a "failure to cooperate," or as something else, it is clear that by a deliberate course of falsehood she deceived the insurance company not only with respect to its initial duty to her but also with respect to its probable financial risk in connection with the Finley claims.

The rights of the Finleys and of Whitener against plaintiff are no better than the rights of Mrs. Long. It is clear to the Court that under elementary principles of estoppel she could not recover against plaintiff if she paid the judgment in favor of the Finleys and then sought reimbursement from the insurer on the theory that she is protected by the policy.

When the insurance adjuster approached Mrs. Long originally and asked whether she had permission to drive the truck, she owed a duty, entirely apart from the policy, either to tell the truth or to refrain from making any statement. Certainly, she was under a duty not to make false statements under oath, as she did. The Court thinks that plaintiff had a right to rely on the truth of her sworn statements and did not act negligently when it did so, notwithstanding the fact that plaintiff knew of the original statement made by her to the Brahics and of the Kelly statement to Trooper Belcher. Plaintiff did rely on the sworn statement and deposition and forewent possible opportunities to settle or participate in the settlement of the Finley claims.

Since the Court is persuaded that Mrs. Long could not recover if she were suing the company on the policy, it follows that the Finleys and Whitener have no rights against plaintiff.

In granting plaintiff the relief to which it is entitled the Court finds it unnecessary to retract, revoke, or modify any findings or conclusions which it expressed from the bench at the conclusion of the trial, and in that connection the Court has read the transcript of its remarks made at the end of the trial, which transcript is part of the record. The Court finds it necessary to further find and conclude, and does further find and conclude, that due to the conduct of Mrs. Long which has been fully described in this opinion she would be estopped to recover against plaintiff in any suit which she might bring against the company on the policy, and that the Finleys and Whitener are bound by her estoppel. It follows that plaintiff is entitled to a declaratory judgment to the effect that it is not obligated to pay any part of the Finley judgment, when that judgment is entered, or to make any contribution to Whitener or to Whitener's liability insurance carrier with respect to the Finley judgment.

An appropriate judgment will be entered herein.